# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

TIDIANE KONE,

        Plaintiff,

    v.

SERGEANT ELMORE,

        Defendant.

Case No. 3:24-cv-00230-SLG

## SCREENING ORDER

On October 16, 2024, self-represented prisoner Tidiane Kone ("Plaintiff") filed a civil complaint and an application to waive prepayment of the filing fee.[1] On December 12, 2024, Plaintiff filed a motion for a preliminary injunction and accompanying declaration.[2] On December 16, 2024, Plaintiff filed an amended complaint and a declaration.[3] On January 8, 2025, Plaintiff filed a "First Amended Complaint."[4] And on January 24, 2025, at Docket 9, Plaintiff filed a "Cause of Action and Order" that is styled like a complaint, appears to reallege his earlier claims and add new claims of ongoing actions by prison officials, and includes his legal research and arguments.[5] Therefore, the Court construes the filing at Docket 9 as another amended complaint. Because an amended complaint

---

[1] Dockets 1-2.

[2] Dockets 4-5.

[3] Dockets 6-7.

[4] Docket 8.

[5] Docket 9.

replaces the prior complaint in its entirety,[6] the Court considers the complaint at Docket 9 to be the operative complaint ("Complaint"). On February 13, 2025, Plaintiff filed a motion seeking to voluntarily dismiss all Defendants except for Sergeant Elmore without prejudice.[7] At this stage of the case, a Notice of Voluntary Dismissal is effective without an order from the Court.[8] Therefore, Plaintiff's motion at Docket 10 is GRANTED, and the case caption is amended to reflect that Sergeant Elmore is the sole Defendant.

The Court has now screened the Complaint at Docket 9 in accordance with 28 U.S.C. §§ 1915(e) and 1915A, with respect to the claims against Sergeant Elmore only. Accepting the facts as alleged in the Complaint as true and construing the claims in the light most favorable to Plaintiff—as the Court must at the screening stage—the Complaint contains sufficient facts to support First Amendment and Fourteenth Amendment claims for relief against Sergeant Elmore for blocking Plaintiff's phone calls. This means that the claims will not be summarily dismissed at this time but may proceed to the next stage of litigation.

The Court has jurisdiction under 28 U.S.C. § 1343.

Plaintiff's application to proceed without prepaying the filing fee, at Docket 2, is granted. The Court's finding that Plaintiff may proceed without prepaying the

---

[6] *See* Fed. R. Civ. P. 15; District of Alaska Local Civil Rule 15.1.

[7] Docket 10.

[8] *See* Fed. R. Civ P. 41(a)(1)(A)(i).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 2 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 2 of 17

filing fee entitles him to service of process by the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d). However, before ordering formal service, the Court staff shall notify the Attorney General that the case has passed initial screening and inquire whether the Attorney General will accept service of behalf of Defendant.[9] Thereafter, the Court will issue an order regarding service.

## SCREENING STANDARD

Under the Prison Litigation Reform Act, a federal district court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[10] In this screening, a district court shall dismiss the case at any time if the court determines that the action:

> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.[11]

In conducting its screening review, a district court must accept as true the allegations of the complaint, construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.[12] However, a court is not

---

[9] *See* District of Alaska Miscellaneous General Order No. 769.

[10] 28 U.S.C. §§ 1915, 1915A.

[11] 28 U.S.C. § 1915(e)(2)(B).

[12] *See Hebbe v. Plier, 627 F.3d 338, 342 (*9th Cir. 2010) ("[O]ur 'obligation' remains [after Ashcroft v. Iqbal, 556 U.S. 662 (2009)], 'where the petitioner is pro se, particularly in civil

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 3 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 3 of 17

required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.[13] Although the scope of review generally is limited to the contents of the complaint, a court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.[14] Such documents that contradict the allegations of a complaint may fatally undermine the complaint's allegations.[15]

## DISCUSSION

### I. Plaintiff's Claims Against Sergeant Elmore

Plaintiff, a convicted prisoner in the custody of the Department of Corrections ("DOC"), claims Sergeant Elmore is violating his constitutional rights by blocking Plaintiff's phone access to certain of his relatives. Plaintiff alleges that, on or about August 14, 2024, Sergeant Elmore indefinitely blocked Plaintiff's son's phone number because the phrase "cash up" was stated during the phone call between Plaintiff and his son.[16] According to DOC, Plaintiff's son's number was restricted due to a "discussion of moving money via Cash App, which is

---

rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'") (citation omitted)).

[13] *Doe I v. Wal–Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

[14] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

[15] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (2001) (noting that a plaintiff can "plead himself out of a claim by including ... details contrary to his claims").

[16] Docket 9. *See also* Docket 1 at 3; Docket 1-5 at 7; Docket 1-5 at 2 (RFI dated Plaintiff claims he then reviewed DOC Policy 810.01 and filed a grievance on August 19, 2024).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 4 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 4 of 17

prohibited."[17] Plaintiff submitted several Request for Interview ("RFI") forms[18] explaining he was talking about money on the phone because he is indigent and needed to find a way to pay for shipping his property to the facility he had recently been transferred to.[19] Sergeant Elmore responded to his RFIs by stating that Plaintiff needed superintendent approval to conduct business[20] and that his son's number would "remain blocked [because] money transactions are not allowed."[21] Plaintiff then filed a grievance and administrative appeal; he appears to have exhausted the administrative process.[22] The decision to block Plaintiff from calling his son was upheld and Plaintiff has been restricted from calling his son's number "indefinitely."[23]

Plaintiff also claims that Sergeant Elmore improperly blocked his father's telephone number on or about December 9, 2024 after Plaintiff said "hi" to his

---

[17] Docket 1-4 at 1.

[18] DOC requires prisoners to "seek written informal resolution through the Request for Interview Form (Form 808.11A) or another appropriate Department form before filing a formal grievance."[18] DOC P&P 808.03(VII)(A)(1)(b), https://doc.alaska.gov/pnp/pdf/808.03.pdf at page 4.

[19] Docket 1-8 at 1 (RFI dated 9/24/24).

[20] Docket 1-4 at 4.

[21] Docket 1-4 at 5.

[22] Docket 1-4 at 4 (RFI dated 8/19/24 RFI requesting a copy of the policy prohibiting prisoners from discussing money transactions on the phone). *See also* Docket 1-5 at 2 (RFI date Plaintiff claims he then reviewed DOC Policy 810.01 and filed a grievance on 8/19/2024); Docket 1-5 at 1 (Sergeant Strawtatr responded to the grievance upholding the restriction on Plaintiff's ability to call his son; Superintendent Hernandez reviewed the appeal and upheld the restriction).

[23] *See* Docket 1-8 at 1 (Response to RFI dated 9/24/24 stating "numbers are restricted indefinitely. There is no timeframe to unblock a number.").

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 5 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 5 of 17

stepmother.[24] In response to Plaintiff's RFI regarding that action, Sergeant Elmore responded that it had been "blocked due to 3 way calls."

Plaintiff seeks monetary damages and injunctive and declaratory relief.[25]

## II. Relevant DOC Policies and Procedures (P&Ps)

The Court takes judicial notice[26] of DOC's publicly available policies and procedures (P&Ps) and cites relevant excerpts below.[27] "It is the policy of the Department to limit, monitor, or record prisoner telephone calls when the security and order of the institution are at risk and to protect the public."[28] DOC P&P 810.01 sets out the general policy regarding access to and restrictions on telephone use. It provides:

> Prisoners in general population and administrative segregation shall have reasonable telephone access as determined by the Superintendent. A general population or administrative segregation prisoner's telephone access may be limited or suspended by:
>
> a.  A disciplinary tribunal and/or hearing officer as punishment for a disciplinary infraction according to DOC P&P 809.02 (Prohibited Conduct and Penalties); or

---

[24] Docket 8 at 3.

[25] Docket 1 at 5; Docket 8 at 10.

[26] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (12th ed. 2024). *See also* Fed. R. Evid. 201 (a court can take judicial notice of its own files and records).

[27] The current DOC policies and procedures are available on DOC's website at https://doc.alaska.gov/commissioner/policies-procedures.

[28] State of Alaska, Dep't of Corr., Policies & Procedures 810.01 (2020),

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 6 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 6 of 17

> b. The Superintendent based upon an individualized determination that the prisoner's telephone use threatens institutional security, the safety of a person, the protection of the public, or otherwise constitutes telephone misuse, such as unlawful victim contact or harassment.[29]

While a superintendent can make an individualized determination to restrict phone access, DOC policy also includes a list of specific prohibitions on the content of phone calls and use of certain call features. For example, prisoners may not "directly or indirectly" use three-way communication, call-forwarding, toll-free calls, etc.[30] Further, DOC policy specifically states,

> Called numbers may be restricted for the following reasons:
>
> 1. If any three-way communication is detected;
>
> 2. The caller attempts to contact a witness in a criminal or civil case either directly or indirectly;
>
> 3. Friend or family request;
>
> 4. Caller exhibits harassing or verbally abusive behavior;
>
> 5. The caller uses a PIN that has not been issued directly to him or her;
>
> 6. Caller contacts or attempts to contact a victim either directly or indirectly; and
>
> 7. Discussion of any criminal activity by either the caller or called party.[31]

---

[29] P&P 810.01(I)(A)(2), http://www.correct.state.ak.us/pnp/pdf/810.01.pdf, at page 2.

[30] P&P 810.01(I)(C), http://www.correct.state.ak.us/pnp/pdf/810.01.pdf, at page 3.

[31] P&P 810.01(I)(H), http://www.correct.state.ak.us/pnp/pdf/810.01.pdf, at page 4.

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 7 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 7 of 17

Although Plaintiff's phone privileges were restricted due to an individualized determination, the Court notes that P&P 809.02 classifies "unauthorized use of the mail or telephone" as a low-moderate infraction,[32] and "misusing the telephone, e.g., making intimidating, obscene, harassing or threatening phone calls; making a three-way-call or using a call forwarding service" as a high-moderate infraction.[33]

### III. Right to Telephone Access

"Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations."[34] Because prison inmates retain their First Amendment rights to communicate with family and friends, including reasonable access to the telephone, the law is clear that unreasonable restrictions on telephone access may violate a prisoner's rights.[35] And yet prisons have a legitimate interest in maintaining security and order, which can justify restrictions on inmates' communications, including phone calls.[36] When assessing the

---

[32] P&P 809.02(IV)(D)(3), https://doc.alaska.gov/pnp/pdf/809.02.pdf, at page 3.

[33] P&P 809.02(IV)(C)(20), https://doc.alaska.gov/pnp/pdf/809.02.pdf, at page 3.

[34] *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). *See also Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir.1986) (holding inmates' First Amendment right to use telephone is subject to reasonable limitations in the face of legitimate security interests); *Overton v. Bazzetta,* 539 U.S. 126, 131 (2003) (freedom of association is among the rights least compatible with incarceration).

[35] *Hogue v. Ada Cnty.,* Case No. 1:13-CV-00100-CWD, 2014 WL 7722999, at *8 (D. Idaho Dec. 12, 2014) (citing *Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir.1991)). *See also Sharp v. Smith*, Case No. 2:24-CV-2866 WBS CSK P, 2025 WL 510299, at *11 (E.D. Cal. Feb. 14, 2025) (finding plaintiff's claim that correctional officers enabled the outgoing call restriction feature for no apparent legitimate penological reason was sufficient to survive screening).

[36] *Lyon v. U.S. Immigration and Customs Enforcement,* 171 F. Supp.3d 961 (N.D. Cal. 2016).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 8 of 17
Case 3:24-cv-00230-SLG     Document 14     Filed 04/07/25     Page 8 of 17

reasonableness of a restriction, federal courts apply the test established under *Turner v. Safely*, which considers four factors:

(1) whether there is a valid, rational connection between the policy and a legitimate governmental interest;

(2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates;

(3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and

(4) whether the regulation represents an "exaggerated response" to prison concerns.[37]

The first *Turner* factor is the most important.[38] To evaluate whether a valid, rational connection exists, a court must determine "whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is 'rationally related to that objective.'"[39] "Additionally, as the Supreme Court has emphasized on multiple occasions, prison administrators . . . , and not the courts, [must] make the difficult judgments concerning institutional

---

[37] *Turner v. Safley,* 482 U.S. 78, 89 (1987).

[38] *Jones v. Slade,* 23 F.4th 1124, 1135 (9th Cir. 2022).

[39] *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (quotation omitted).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 9 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 9 of 17

operations."⁴⁰ Thus, the "only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests."⁴¹ And prison regulations restricting telephone use bear a self-evident connection to the prison's legitimate interest in "preventing inmates from making threatening or harmful calls to the community, ensuring the safety and security of the institution, and preventing the commission of crimes."⁴²

However, even when the prison's interests are legitimate, "it [is] important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion."⁴³ Variations in the enforcement of an otherwise legitimate regulation will not always rise to the level of inconsistent application; however, evidence of inconsistent application may be proof that the policy is not neutral.⁴⁴

In addition, "[d]ue process requires fair notice of what conduct is prohibited before a sanction can be imposed."⁴⁵ While "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations," "the degree of

---

⁴⁰ *Overton,* 539 U.S. at 137 (citations and internal quotation omitted).

⁴¹ *Prison Legal News v. Cook*, 238 F.3d 1145, 1150 (9th Cir. 2001).

⁴² *Lyon v. U.S. Immigration and Customs Enforcement,* 171 F. Supp.3d at 961. *See also Crime Justice & Am., Inc.,* 876 F.3d at 975 ("Maintaining security in a jail is inarguably a legitimate government interest.").

⁴³ *Jones v. Slade,* 23 F.4th 1124, 1137 (9th Cir. 2022).

⁴⁴ *Id*. at 1138.

⁴⁵ *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996) (citation omitted).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 10 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 10 of 17

specificity required of such regulations is [not] as strict in every instance as that required of ordinary criminal sanctions."[46] In the prison context, " 'the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting."[47] Federal courts defer to prison authorities' interpretation of prison rules "unless fair notice was clearly lacking."[48]

### IV. Plaintiff's Claims

As stated above, the Court has screened the Complaint as to only Sergeant Elmore. First, the Court notes that Plaintiff has not updated his address in this case. However, on March 18, 2025, Plaintiff filed a notice in another ongoing federal case that he was transferred to Spring Creek Correctional on March 9, 2025.[49] Plaintiff's transfer to another facility renders moot all claims for injunctive or declaratory relief against the previous facility.[50] Therefore, Plaintiff's motion for a preliminary injunction **at Docket 4 is DENIED as moot.**

---

[46] *Meyers v. Alldredge*, 492 F.2d 296, 310 (3rd Cir. 1974).

[47] *Meyers,* 492 F.2d at 311 (quoting *Landman v. Royster,* 333 F. Supp. 621, 655–56 (E.D.Va.1971)).

[48] *Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir.1974).

[49] *Kone v. Baker,* Case No. 3:23-cv-00231-SLG, Docket 87.

[50] *McQuillion v. Schwarzenegger,* 369 F.3d 1091, 1095 (9th Cir. 2004) (citing *Bernhardt v. Cnty. of L.A.,* 279 F.3d 862, 871 (9th Cir. 2002)); *see also Preiser,* 422 U.S. at 402–03 (where prisoner challenges conditions of confinement and seeks injunctive relief, transfer to another prison renders request for injunctive relief moot absent evidence of an expectation that prisoner will be transferred back to the alleged offending institution).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 11 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 11 of 17

Further, to the extent any phone restrictions have followed Plaintiff to his present facility, Plaintiff must not bring those claims in this case. This case shall proceed solely on Plaintiff's claim for damages against Sergeant Elmore.

### *Restriction on calls to father*

Plaintiff claims he simply said "hi" to his stepmother while on the phone with his father. Plaintiff alleges that DOC relied on DOC P&P 810.01 in blocking that phone, which prohibits three-way communications. The policy defines three-way communication as:

> Telephone calls where: there are initially two (2) parties to the call, and then additional parties are added by means of a conference feature or similar method, including but not limited to; a party relays a message via text or similar technology on behalf of the caller; a party posts messages or comments on behalf of the caller to a social media site; or the dialogue is broadcast through or to social media sites, such as Facebook Live or Snap Chat.[51]

This "three-way communication" prohibition is included on both the list of "Prohibited Phone Calls" and in the list of reasons why "numbers may be restricted."[52] Additionally, the Friends & Family Handbook expressly states that three-way calling is prohibited and warns that violation of the policy "may result in [the] number being restricted or blocked."[53]

---

[51] P&P 810.01, https://doc.alaska.gov/pnp/pdf/810.01.pdf, at page 1.

[52] P&P 810.01, https://doc.alaska.gov/pnp/pdf/810.01.pdf, at pages 3-4.

[53] State of Alaska, Dep't of Corr., *Friends & Family Handbook,* https://doc.alaska.gov/institutions/docs/Family%20Handbook.pdf, at page 11.

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 12 of 17
Case 3:24-cv-00230-SLG     Document 14     Filed 04/07/25     Page 12 of 17

P&P 810.01's examples of three-way communication all use technology and social media platforms; the policy does not appear to prohibit Plaintiff's conduct, which apparently consisted of Plaintiff's father handing the phone to his spouse. Liberally construed, the Complaint may state a viable claim against Sergeant Elmore of a constitutional violation for permanently blocking Plaintiff's telephone access to his father based on a violation of the three-way communication policy.[54] Therefore, this claim may proceed.

### *Restriction on call to son*

Many regulations limiting telephone use by inmates, including restrictions similar to DOC's policy here, have been sustained as reasonable.[55] And federal courts have approved policies restricting prisoners' visitation and phone access for various lengths of time.[56] Here, P&P 810.01 appears to be reasonable on its face. But DOC's responses to Plaintiff's administrative filings claim would appear to

---

[54] *Cf. Velasquez v. Benov,* Case No. 1:10-cv-01593, 2011 WL 2960875, at *5 (E.D. Cal. July 20, 2011), *aff'd*, 518 F. App'x 555 (9th Cir. 2013) (unpublished) (addressing whether prison regulation accorded prisoner fair notice of prohibited phone conduct to comport with due process).

[55] *See, e.g., Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996) (upholding pre-approved calling list of no more than 10 persons); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (upholding pre-approved calling list of no more than 30 persons).

[56] *Cf. Rodriguez v. Shartle*, No. CV 14–2139–TUC (JAS), 2016 WL 3194653 (D. Ariz. June 9, 2016) (stating that "depriving a prisoner of phone calls and visits for a year does not violate the Eighth Amendment") (citing *Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (two-year ban on visits to inmates who had committed two or more substance-abuse violations does not violate the Eighth Amendment)); *Clark v. Plummer*, No. C 95–0046 CAL, 1995 WL 317015, at *2 (N.D. Cal. May 18, 1995) ("Courts have held that even a total denial of telephone access for convicted prisoners is not cruel and unusual punishment under the Eighth Amendment.").

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 13 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 13 of 17

indicate that any conversation about "money" is prohibited, even though the policy itself does not appear to expressly prohibit any reference to money or cash. Instead, the policy restricts discussions of "any criminal activity by either the caller or the called party."[57] It is unclear whether Plaintiff received fair notice that any reference to cash would result in indefinitely blocking his phone access to his son.[58] Prisons may well have a legitimate interest in restricting prisoner's conversations about money, as such conversations can be related to criminal activities or pose security risks.[59] However, if a conversation is purely about ensuring bills are paid or relatives are taken care of financially, and there is no evidence of a security threat, the importance of the governmental interest may be more attenuated.[60] Such a restriction might be considered an exaggerated response and could be construed as punitive or retaliatory.[61]

Liberally construed, the Complaint may state a viable constitutional claim against Sergeant Elmore for permanently blocking Plaintiff's telephone access to

---

[57] P&P 810.10(I)(H)(7), https://doc.alaska.gov/pnp/pdf/810.01.pdf.

[58] *Cf. Velasquez v. Benov,* Case No. 1:10—cv-01593, 2011 WL 2960875, at *5 (E.D. Cal. July 20, 2011), *aff'd*, 518 F. App'x 555 (9th Cir. 2013) (unpublished) (addressing whether prison regulation according prisoner fair notice of prohibited phone conduct).

[59] *See Overton v. Bazzetta,* 539 U.S. 126, 133 (2003) ("internal security [is] perhaps the most legitimate of penological goals").

[60] *See Overton,* 539 U.S. at 137 ("If the withdrawal of all visitation privileges ... were applied in an arbitrary manner to a particular inmate, the case would present different considerations.").

[61] *Id.*

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 14 of 17
Case 3:24-cv-00230-SLG     Document 14     Filed 04/07/25     Page 14 of 17

his son based on a violation of DOC telephone policy. Therefore, this claim may proceed.

### V. Plaintiff's Notice of Appeal

On March 21, 2025, Plaintiff filed a "Notice of Appeal" that simply states he is appealing "an order or procedure entered in this action."[62] Plaintiff has not paid the $605 filing fee necessary to proceed with his appeal.[63] Nor does it appear that he has filed a completed financial affidavit in this case in the detail prescribed by Form 4 of the Federal Rules of Appellate Procedure together with a motion seeking to waive prepayment of the appellate filing fee. Nor has he stated the issues that he intends to present on appeal as required by Rule 24(a) of the Federal Rules of Appellate Procedure.

When Plaintiff filed his Notice of Appeal, the Court had issued only one order in this case: At Docket 3, the Court's Standing Order for Self-Represented Prisoners acknowledges receipt of Plaintiff's initial filings and provides general information about the screening process.[64] When Plaintiff filed his Notice of Appeal, the Court had not issued a final, appealable judgment in this case, nor any order that could fall within the limited exceptions that allow for an interlocutory

---

[62] Docket 11.

[63] Docket 13 (Docketing Notice for Ninth Circuit Case No. A-24-7006).

[64] *See* Docket 3.

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 15 of 17

appeal.[65] Therefore, the Court finds Plaintiff's appeal is defective and this case shall continue to proceed at the district court.[66]

**IT IS THEREFORE ORDERED:**

1. Plaintiff's motion at **Docket 9 is GRANTED** to the extent the Court considers the filing to be the operative complaint.

2. Plaintiff's motion to dismiss all defendants other than Sergeant Elmore at **Docket 10 is GRANTED**. The Clerk shall update the case caption accordingly.

3. Plaintiff's motion for a preliminary injunction at **Docket 4 is DENIED as moot.**

4. Plaintiff's application to waive prepayment of the filing fee at **Docket 2 is GRANTED.** Plaintiff is advised federal law only allows prisoners to waive prepayment of the fees associated with civil lawsuits. Prisoners must pay the filing fee incrementally until paid in full, regardless of the outcome of the action.[67] The Court will issue a separate order on the collection of the filing fee.

5. If Plaintiff is released while this case remains pending and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either

---

[65] *See* 28 U.S.C.A. § 1292(b) (outlining the jurisdictional requirements that must be met for appellate review).

[66] *See Nascimento v. Dummer,* 508 F.3d 905, 908 (9th Cir. 2007) ("When a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply.").

[67] 28 U.S.C. § 1915(b)(1)&(2).

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 16 of 17
Case 3:24-cv-00230-SLG   Document 14   Filed 04/07/25   Page 16 of 17

(1) pay the unpaid balance of his filing fee or (2) file a Non-Prisoner Application to Waive the Filing Fee (Form PS11).[68] Failure to comply may result in dismissal of this action.

6. Self-represented litigants are expected to review and comply with the Federal Rules of Civil Procedure, the District of Alaska's Local Civil Rules, and all Court orders. Failure to do so may result in the imposition of sanctions authorized by law, including dismissal of the action.

7. The Court will issue an order regarding service on Defendant Elmore after determining whether State of Alaska's Department of Law will accept service on behalf of Defendant. Plaintiff should not attempt service or file any service-related forms with the Court unless ordered.

8. Self-represented litigants must be ready to diligently pursue each case to completion. Missing a deadline or otherwise failing to pursue a case may result in the dismissal of the action.

DATED this 7th day of April, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
SHARON L. GLEASON
UNITED STATES DISTRICT JUDGE

---

[68] The Court's template forms are available upon request from the Clerk's office and on the Court's website at https://www.akd.uscourts.gov/forms.

Case No. 3:24-cv-00230-SLG, *Kone v. Elmore*
Screening Order
Page 17 of 17
Case 3:24-cv-00230-SLG    Document 14    Filed 04/07/25    Page 17 of 17