**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| TIDIANE KONE,<br><br>Plaintiff,<br><br>v.<br><br>TOM ELMORE,<br><br>Defendant. | 3:24-cv-00230-ACP<br><br>**ORDER ON THE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>[Dkts. 64, 72] |

Tidiane Kone is in the custody of the Alaska Department of Corrections (DOC). DOC policy bars inmates from conducting outside banking without written approval and engaging in three-way phone calls. After Kone allegedly violated those policies, Sergeant Tom Elmore blocked Kone from calling his father's and son's phone numbers and Kone filed this First Amendment challenge. The Parties filed cross-motions for summary judgment, which are now ripe. (Dkt. 64; Dkt. 72; Dkt. 73; Dkt. 77) As explained below, Kone's motion for summary judgment is **DENIED** and Elmore's is **GRANTED**.

## I. BACKGROUND

### A. DOC blocked Kone from calling his son's phone number.

On August 14, 2024, Kone called his son's phone number. Once the call connected, he immediately asked his son "did anyone call you to send you money?" (Dkt. 65-3) Throughout the two-minute phone call, Kone consistently reiterated that someone was supposed to send money to his son and asked him to check his cash app to see if it had arrived. (*Id.*) The call was ended by the prison shortly after his son stated that no one sent

him anything. (*Id.*) The son's number was then blocked under DOC policy 302.12. (Dkt. 65-2 at 1) That policy governs financial transactions by inmates and provides that "[a]ll banking transactions require the written approval of the Superintendent." (Dkt. 65-4 at 8) Elmore interpreted this policy to cover discussion of financial transactions, including those using Cash App, during inmate phone calls. (*See* Dkt. 65-2 at 4; Dkt. 73 at 4)

Kone filed a series of Requests for Information (RFIs) about why the number was blocked, and Elmore responded that inmates are barred from conducting outside banking over the phone without approval. (*See* Dkt. 65-2 at 1, 3-4) On August 19, 2024, Kone filed a grievance about the blocked phone number. (*Id.* at 2) That grievance was rejected during screening because the phone number was not provided. (*Id.* at 5) On August 30, Kone provided the phone number. (*Id.* at 7) That same day the grievance was again screened out as "factually incredible or clearly devoid of merit." (*Id.* at 6) The RFI was then forwarded to Superintendent Hernandez as an appeal of the screening decision, and the superintendent stated that he agreed with the screening's findings.[1] (*Id.* at 7)

**B. DOC blocked Kone from calling his father's phone number.**

On December 4, 2024, Kone called his father's phone number. After talking to his father for about five minutes, Kone provided a phone number to his father. (*See* Dkt. 65-1) His father's wife then joined the call. (*See id.*) The initial number was then blocked because Kone allegedly violated DOC Policy 810.01, which prohibits three-way calls. (*See* Dkt. 65-2 at 8; Dkt. 72 at 2).

---

[1] The parties dispute whether this was an appeal of the initial screening or of both screenings. (*See* Dkt. 65 at 15; Dkt. 77 at 1)

After the number was blocked, Kone filed an RFI asking why it was restricted. (Dkt. 65-2 at 8) Elmore informed Kone that the number was blocked due to the prohibition on three-way calling. (*Id.*) Kone filed grievance AJ24-336 and stated that he did not participate in a three-way call and that his father simply passed the phone to someone else. (Dkt. 65-2 at 9) That grievance was screened as "factually incredible or clearly devoid of merit," because Kone provided a phone number to his father right before another person joined the call. (*Id.*) There is no appeal of that screening decision in the record.

## II. LEGAL FILINGS

Kone filed a claim under 42 U.S.C. § 1983, alleging that Elmore violated his First Amendment rights by blocking the two phone numbers. (*See* Dkt. 9) The operative complaint was screened under 28 U.S.C. § 1915A. (Dkt. 14) Elmore moved for summary judgment, arguing that Kone failed to exhaust his administrative remedies, that the First Amendment allows DOC to prohibit inmates from conducting outside banking to protect prison security, and that Elmore had qualified immunity. (*See* Dkt. 64; Dkt. 65) Kone responded with a filing titled "[Nonmovant] Motion for Summary Judgment Pursuant to Civil Rule 56."[2] (Dkt. 72 (alteration in original)) There, Kone argues that he exhausted available remedies with respect to his son's number, but he did not address exhaustion as to his father's number. (*Id.* at 1) In Kone's view, blocking the numbers violated his First Amendment right to telephone access. (*Id.* at 4) He also raised a due process claim that he

[2] Elmore contends that this motion was only a response to his own motion for summary judgment and not a motion for summary judgment itself. (*see* Dkt. 73 at 2) However, interpreting the filing as a motion for summary judgment (i.e., how it was titled) does not prejudice Elmore or affect the outcome.

was not given notice that discussing Cash App over the phone violated DOC policy. (*Id.* at 4) Elmore filed a reply brief and Kone filed an "Omnibus Response" to Elmore's reply brief. (Dkt. 73; Dkt. 77) The cross-motions for summary judgment are now ripe.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If this showing is made, the nonmoving party must offer evidence "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). However, factual assertions "blatantly contradicted by the record" cannot be used to create a genuine issue of material fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Nor do conclusory, self-serving affidavits. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## IV. ANALYSIS

### A. Kone failed to exhaust the remedies available for challenging the decision to block his father's phone number.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title [by an inmate] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory—it cannot be waived. *Ross v. Blake*, 578 U.S. 632, 639 (2016). To satisfy this requirement, an inmate must "make full use of the prison grievance

process." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). The Defendant bears the burden of proving that an inmate did not complete the grievance process. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Alaska DOC policy 808.03 outlines DOC's grievance process. (Dkt. 65-5) This process requires a prisoner to first attempt to resolve the issue informally. (*Id.* at 7) A prisoner can do this by speaking with a staff member involved in or aware of the incident or by submitting an RFI. (*Id.*) If this does not resolve the issue, the prisoner may file a grievance. (*Id.* at 6-7) Staff then screens the grievance for deficiencies. (*Id.* at 7) If the grievance is rejected during screening, it will be returned to the prisoner, who can either correct the deficiency or appeal the screened grievance. (*Id.* at 8)

Kone did not properly exhaust the remedies available for unblocking his father's number. To do so, he needed to "make full use of the prison grievance process." *Woodford*, 548 at 94. That process allowed Kone to appeal Elmore's decision to reject his grievance during screening. But it is undisputed that Kone filed no such appeal. For this motion, Elmore reviewed Kone's institutional file and was unable to find an appeal. (See Dkt. 65 at 14, n.74) And Kone does not address whether he appealed the grievance in his filings. (*See* Dkt. 77 at 1) Thus, there is no factual dispute: Kone failed to appeal the decision to block his father's phone number. That is fatal to his claim, and Elmore is entitled to summary judgment on the part of this case involving Kone's father's phone number.

## B. Blocking the son's phone number did not violate the Constitution.

Kone alleges that blocking his son's number violated the First Amendment.[3] (Dkt. 9 at 4-6) Elmore responds that blocking the number was a valid application of a DOC policy that bars inmates from conducting outside banking, which could lead to smuggling and extortion inside the prison. (Dkt. 65 at 7-8) As explained below, Kone's First Amendment rights were not violated.

### 1. The First Amendment rights of inmates are subject to reasonable limitations.

Inmates have the First Amendment right to communicate with people, including family and friends, outside prison walls, and the Ninth Circuit has recognized that the use of a telephone is a means of exercising this right. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) *cert. denied* 538 U.S. 1047 (2003). However, like other rights in the penal context, the right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (quoting *Hutchings v. Corum*, 501 F. Supp. 1276, 1296 (W.D. Mo.

---

[3] The PLRA's exhaustion requirement applies to Kone's claim about his son's phone number as well. But the parties' dispute over that issue is more complicated. So rather than resolve the "more complex question of exhaustion," Kone's claims are dismissed on the merits. *See Perttu v. Richards*, 605 U.S. 460, 470 ("A district court may dismiss plainly meritless claims without first addressing the often more complex question of exhaustion." (citation modified) (quoting *Woodford*, 548 U.S. at 101)).

1980)). "If the limitations on access are reasonable, there is no first amendment violation." *Id.*

Here, Elmore argues that the prison restricted the phone number in accordance with a DOC policy which prohibits banking transactions without superintendent approval. (*See* Dkt. 65 at 17; Dkt. 73 at 4) This policy allegedly serves two important purposes related to prison security. (Dkt. 66 at 1-2) First, the prohibition "discourages the formation of black markets within a correctional facility" which could lead to the introduction of contraband or violence "when perceived debts go unpaid." (*Id.* at 2) Second, the prohibition reduces violence within correctional facilities and protects the inmate's families "by discouraging inmates from extorting money from other inmates or their families with threats of violence." (*Id.* at 2-3)

Kone does not dispute whether the prison has an interest in preventing outside banking. Instead, he argues that the policy does not apply to him because it does not prohibit using the words "Cash App" or seeking to have a family member help pay a bill (*See* Dkt. 72 at 4; Dkt. 77 at 2) As explained below, blocking the son's number was a reasonable restriction of Kone's First Amendment rights.

**2. Blocking the number was a reasonable restriction under *Turner*.**

Courts consider four factors when determining whether a restriction on an inmate's First Amendment rights is reasonable:

> (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of

> prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns.

*Valdez*, 302 F.3d at 1048-49 (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (2002).

This "framework is highly deferential" and often requires courts to uphold rules that would plainly violate the First Amendment outside the penal context. *Prison Legal News v. Ryan*, 39 F.4th 1121, 1128 (9th Cir. 2022). Here, all four of the *Turner* factors support Elmore's position that the restriction was reasonable.

**a. Blocking the number served a valid penological interest.**

The first factor asks whether there is a rational connection between the challenged action or policy and a valid penological interest. A policy meets this requirement if "the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) [] the policy is 'rationally related to that objective.'" *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989)). In this context, the word "neutral" has a technical meaning. That element asks whether the restriction furthers "an important or substantial governmental interest unrelated to the suppression of expression." *Thornburgh*, 490 U.S. at 415 (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974)). A distinction is neutral when it is made "solely on the basis of the [] potential effect on the prison's legitimate objectives." *Mauro*, 188 F.3d at 1059. Finally, it does not matter whether the policy actually advances the prison's interest as long as the defendant could "reasonably have thought that the policy would advance its interests." *Id.* at 1060. That means that the connection cannot be so remote that the policy becomes arbitrary or irrational. *See Turner*, 482 U.S. at 89-90.

Here, DOC's actions clearly meet the first two elements. The prohibition on outside banking serves important interests: preventing smuggling and protecting inmates and their families from extortion. (*See* Dkt. 66 at 1-2) Kone has not disputed that these interests are important. Nor has he disputed that DOC's decision was neutral. Kone provided no evidence that the number was blocked for any reason other than the discussion of a money transfer over Cash App. These elements favor DOC.

As to the third element, blocking the number was rationally related to the prison's stated interests. Kone's two arguments are not persuasive. First, he argues that the policy does not apply to this situation because it does not prohibit using the words "Cash App" or asking family members to help pay for bills. (*See* Dkt. 72 at 4) Elmore responds that discussing Cash App transactions is clearly bank-related, and that the prohibition on inmate banking is broad enough to cover transactions on peer-to-peer systems like Cash App. (Dkt. 77 at 4-5) Elmore is correct on both points. It is clearly rational to interpret the policy to cover peer-to-peer payment systems because those pose the exact same risk as conventional banking, the possibility of smuggling and extortion. That connection is not remote, and the application was not arbitrary or irrational. *See Turner*, 482 U.S. at 89-90. This is sufficient to establish that the policy was rational and valid. *Mauro*, 188 F.3d at 1060.

Second, Kone argues that the conversation was a simple question about whether his son had received money, which does not implicate the prison's interest. (Dkt. 77 at 2) However, this characterization is fully contradicted by the record, meaning it does not create a genuine factual dispute. *Scott*, 550 U.S. at 380. In one of his RFIs, Kone stated that he was talking with his son to have a family "try to send my son money." (Dkt. 65-2 at 2,

4) Additionally, in his summary judgment brief, Kone states that the money was being transferred to help his son transfer property. (Dkt. 72 at 2) Since the record plainly shows that Kone was asking about Cash App to facilitate a financial transaction involving his son, the conversation implicated the prison's interest in prohibiting inmates from participating in outside banking. Therefore, this factor favors Elmore.

**b. Kone has alternate ways to contact his family.**

The next factor asks whether there are alternative ways for the prisoner to exercise the right at issue. *See Mauro*, 188 F.3d at 1061. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90 (citations omitted). An inmate denied phone access has alternative ways to communicate with people outside of prison if they can receive visitors and/or send and receive mail. *Valdez*, 302 F.3d at 1049.

There is no genuine dispute that Kone has alternate ways to communicate with his family. His son can visit him in jail. Kone can send and receive mail. Elmore has even indicated that Kone could discuss financial transactions if he secures approval beforehand. (Dkt. 65 at 20) Kone has not disputed that these options are available. While it may be difficult for his family to visit in person because they apparently live in the lower 48, that does not mean that he has no way to communicate with them. (*See* Dkt. 65-2 at 9) This factor therefore favors Elmore as well.

**c. Unblocking the number may affect prison security and expend prison resources.**

The third factor asks whether accommodating Kone's right will impact "prison personnel, other inmates, and the allocation of prison resources." *Mauro*, 188 F.3d at 1061. If accommodating the right "will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. This can include resources spent to monitor telephone conversations and ensure that inmates do not violate legitimate prison rules. *See Valdez*, 302 F.3d at 1049.

Here, unblocking the number could potentially impact security or expend resources in some measurable way. DOC has prohibited inmates from discussing financial transactions over the phone because they have determined that such conversations could result in smuggling, extortion, and threats of violence. (*See* Dkt. 66 at 2-3) And unblocking the number could require DOC to expend additional resources monitoring Kone's phone calls to ensure that he does not continue to discuss financial transactions. *See Valdez*, 303 F.3d at 1049. Kone does not address this factor at all. Therefore, while the Court does not give much weight to this factor, it is either neutral or slightly favors Elmore.

**d. Kone has not provided an alternative way for DOC to protect its interests.**

Finally, the fourth factor asks whether the action "is an exaggerated response to the jail's concerns." *Mauro*, 188 F.3d at 1062. The existence of obvious, easy, and effective alternatives can be evidence that a restriction is exaggerated. *Turner*, 482 U.S. at 90; *Valdez*,

302 F.3d at 1049. The prisoner has the burden of showing a ready alternative. *Mauro*, 188 F.3d at 1062. Kone offered no alternative.

This factor thus points toward the same conclusion as the others: Elmore's decision to block the son's phone number was a reasonable restriction aimed at furthering the prison's interests in preventing smuggling and extortion. Since Kone has failed to create a factual dispute over any of the four factors, he has failed to meet his summary judgment burden. Therefore, Elmore is entitled to summary judgment on the argument that his First Amendment rights were unlawfully restricted.

### 3. Kone's First Amendment retaliation claim fails.

Kone alleges that Elmore blocked the phone numbers as retaliation for a lawsuit against another prison official. (Dkt. 9 at 3-4) This claim fails for similar reasons as the First Amendment claim.

A First Amendment retaliation claim by an inmate requires five basic elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Summary judgment on a prisoner's retaliation claim is proper as long as there is "some evidence" to support the restriction and the restriction served a legitimate penological purpose. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). A prisoner must show that "the prison authorities' retaliatory action did not advance the legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."

*Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). As shown above, Kone did not genuinely dispute whether the restriction advanced a legitimate correction goal or that the prison could have unblocked the number without harming a valid interest. That alone is fatal to the retaliation claim.

Additionally, Kone has not provided any evidence to establish that the number was blocked in retaliation because he engaged in protected conduct aside from his bare assertion that the number was blocked as retaliation for his lawsuits against prison officials. (*See* Dkt. 9 at 3) He provides no evidence that the son's number was blocked *because of* his lawsuits. He may assert the prison took other actions that were retaliatory, but he does not dispute the reason that the son's number was blocked beyond claiming the prison's policy is inapplicable. That is insufficient to survive summary judgment. *Publ'g Clearing House*, 104 F.3d at 1171.

**4. Kone's due process claim also fails**

While the Court identified that Kone might be able to raise a due process claim in its screening order, there was no due process violation and that claim fails as a matter of law.[4] (*See* Dkt. 14 at 10-11) "Courts defer to prison officials' interpretations [of prison rules] 'unless fair notice was clearly lacking.'" *Lane v. Salazar*, 911 F.3d 942, 950 (9th Cir. 2018) (quoting *Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1983)). Due process requires "certain minimal standards of specificity in prison regulations." *Meyers v.*

---

[4] Elmore disputes whether this claim was properly brought because it is not in the complaint. (Dkt. 73 at 6). As the claim fails, it is not necessary to decide whether the complaint, liberally construed, included a due process claim. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

*Alldredge*, 492 F.2d 296, 310 (3rd Cir. 1974). But the "the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting." *See id.* (quoting *Landman v. Royster*, 333 F. Supp. 621, 655-56 (E.D. Va. 1971)).

Here, the prison regulations placed detailed restrictions on inmates conducting outside banking. (*See* Dkt. 65-4) These included a regulation which specifically required inmates to obtain written approval for "[a]ll banking transactions." (*Id.* at 8) While this regulation specifically applied to prisoner bank accounts, the policy gave notice that outside financial transactions made or directed by inmates were subject to regulation and could require the inmate to obtain permission. At minimum, Kone should have asked for permission before discussing a financial transfer from one family member to another. Therefore, fair notice was not clearly lacking, and Kone's due process claim fails as a matter of law.

**C. Elmore has qualified immunity.**

Qualified immunity protects an official from a suit "unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam). A right is clearly established when the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). "A right is not clearly established if existing precedent does not place the constitutional question 'beyond debate.' " *Id*. (quoting *Rivas-Villegas*, 595 U.S. at 5). General principles are not sufficient. *Id.* Instead, officials will receive qualified immunity "unless they could have 'read' the relevant precedent

beforehand and 'know[n]' that it proscribed their specific conduct." *Id.* (alteration original) (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). If there is no constitutional violation, it is axiomatic that the conduct did not violate clearly established law.

Here, Elmore did not violate Kone's First Amendment rights. Even if he had, he would not have violated clearly established law. While case law protects a prisoner's First Amendment rights generally, there is no case specifying that a prison cannot restrict a phone number after the inmate discusses financial transactions over the phone. Therefore, Elmore is entitled to qualified immunity.

## V. CONCLUSION

Elmore's motion for summary judgment is **GRANTED**. Kone's cross-motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

DATED August 18, 2026, at Anchorage, Alaska.

/s/ *Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge